Case number 16-5185. Roman Sirocco, in his personal capacity and derivatively, on behalf of himself and all other similarly situated et al. appellants, v. Steven T. Mnuchin, in his official capacity as Secretary of the Treasury et al., Mr. Lewis for the appellants, Ms. Carroll for the appellees. Good morning. Good morning, Your Honors. May it please the Court, my name is Eric Lewis, and I represent the Sirocco family, who were the controlling shareholders of the Bank Privada d'Andorra, which we call BPA. Your Honors, this is a case where FinCEN, an agency of the Treasury Department, has abused its tremendous power in the international financial system. It has coerced a foreign regulator into shutting down and liquidating a bank, and is now trying to avoid judicial scrutiny of its conduct by arguing mootness. Here, FinCEN unsuccessfully suggested that Andorra change its money laundering policies, and when that didn't work, it did, in the words of a U.S. official, quote, use the hammer, unquote, making an example of BPA, issuing a notice and a notice of proposed rulemaking, finding BPA to be a primary money laundering concern, and it proposed to issue the most severe sanction, borrowing it from the U.S. financial system. Treasury itself has said that's effectively a death sentence for an international bank. FinCEN also encouraged all financial institutions and foreign regulators to act in accordance with its notices. Overnight, Andorra expropriated the shares of the bank, shut it down, and took control of its assets. So let me just ask you, is your main point here what I'll call the third prong, the Davis prong, that even though the government withdrew the notice, et cetera, the lingering effects on your client are such that the district court could not find that the effects of the government's actions are irrevocably removed, essentially? Yes, Your Honor. Under Davis and Knox, which follows Davis, the effects have to be completely and irrevocably eradicated. And if the court can grant any effectual relief, whatever, and the parties have a concrete interest, however small, that can be redressed, the case is not moot. Go ahead. Let me take you to your complaint. Yeah. You raised two claims, one that you wanted a holding that the notices were unlawful, and the second was you wanted an order rescinding the notices. That's what you asked for. That's what we look at to work through this. And that's all that's there. There was no remedies for continuing effects or anything. I don't even know what they would be. But those were the two things you asked for. An order rescinding the notices, the order, the notice was withdrawn. And there's no likelihood whatsoever that it's coming back. So that is clearly moot. So what you have left is your request for a holding that the notices were unlawful. And you've got some real problems, because the case law says when one piece of the case is mooted out, you have to show standing on what's left. And I don't know how you have standing to show that you and your clients can come to the court and seek a request that the notices that are not there anymore are unlawful. And there are a number of ways I can go at that to make the point that I don't know how you mean standing. But for me, I don't know how you satisfy standing, because one piece of this is gone. It will never come back. And it's what you asked for. You asked that the notices be rescinded. They are rescinded. So that's gone. And if I use Summers and Steele Co. and Friends of the Earth and all these other cases, you are now standing to show us as a jurisdictional matter you have standing. I don't know how you have standing. You can't make it. Let me just play it out completely so you understand my words. You're essentially, if you think you have standing, you're essentially making the claim that what they're doing, the way they're enforcing their law, is impermissible. That's a generalized grievance. You can't bring it. If you came in here just to make that claim, I understand what your aggravation is, but if you came in and said to the court, you know, we're generally in this world, as are many other people, we're aggravated with the way they enforce the law, and we want to challenge it, you don't have standing. Your Honor, our position is that the withdrawal itself, and I think it is worthwhile to look very carefully at the withdrawal notice, it is not a withdrawal notice at all. What it says is this bank has been killed at our instance, and now that it has been killed as we've directed, we don't need to have the finding of primary money laundering concern, although our finding was completely correct. I went to what? I got to go back to the point. You're asking for the rescission of the notice. It was rescinded. Now, you don't like the fact that it was rescinded in a nasty way. Take your point. But as a judge, I'm saying so what? It's rescinded. So let's take what you're opposing. Let's say it was rescinded and you come in after the fact, and you say to us, you know, the way they rescinded was just really unpleasant, and we want to challenge that. We would say you don't have standing. Your Honor, if I may, I would cite the court to L.A. County, as Judge Rogers referenced, as well as to this court's decision in CFAFI and in American Bar Association versus the Federal Trade Commission. And so the question is, does the rescission of the order constitute a complete and irrevocable eradication? If it has not completely and... But how do we, when we say eradication, we have to look at the complaint to know what it is you wanted. And what you wanted was a rescission. You got it. There's nothing to suggest that we want some kind of collateral damages or remedies that would come because of the effects. The only thing you wanted was a rescission. You got it. No, we wanted one other thing, Your Honor. We wanted a declaration. Yes, that's exactly right, that it was unlawful. And protection. Okay, so that's exactly the way I'm analyzing it. You got one. It is gone. It is completely mooted out. What you were left standing arguing is, now we want a declaration that that notice that no longer exists was unlawful. And I don't know how you have standing. And you have to show standing first. You can't say we had standing initially. You now are left standing to show us you have standing to go after that particular point. And I don't know how you get there. Well, Your Honor, I think in Friends of the Earth there was a suggestion that at the mootness point it may be different than initially, but we're not relying on that point. You, Summers, you steelcoat. I mean, Justice Scalia's opinion steelcoats. And we don't have anything to challenge now. It's gone. You're too late. But you, Summers, that's the clear divide in the Supreme Court's case law. And all those cases harken back to old case law that says the same thing. Lyons was the beginning of it. If you come in with a number of complaints and part of it's gone and you have to show us now that you still have standing to go after what's left. Your Honor, I believe that if I could take Your Honor to the Bennett v. Speer case, which the Supreme Court, Justice Scalia, writing for a unanimous court, and that was a case where a rule was withdrawn. There was a third-party issue. And the court said if there's a determinative or coercive effect on a third party, and if we add that to Knox as well as to L.A. County, it's only gone if it's fully gone. If its effect is completely and irrevocably eradicated. And in terms of the cases that I've cited, if it is not completely and irrevocably eradicated, then the fact that they've withdrawn it does not defeat standing. And I said this respectfully, I don't see how you could write Bennett to get what you want. Because the court was assuming there was a regulation, an environmental regulation, and you had competing parties, those who wanted it and the folks, the ranchers who wanted the water. And the court said they have standing to be here and it's a final order. The court was talking about finality and they assumed there was a final order. That was there to be challenged. Again, I would come back to Knox, and I'd also come back to L.A. County. And I think that L.A. County most clearly stands for the proposition that the simple act of administrative withdrawal, VELNON, does not leave you without any options and does allow you to get a declaratory judgment even though the regulation has been withdrawn. It allows a declaration if, in fact, it is more than a nasty withdrawal. It is a withdrawal which confirms a pejorative comment. And if I go back to Tuck. Here's what, I don't mean to interrupt you, but I really would like your answer to address this. What they're saying, and Friend says the same thing, you have to be able to show that there's some possibility that the notice that's no longer there could somehow return and affect you. For example, in Friends of the Earth, they were talking about, well, there's a question now as to whether, now that they've gone out of business, whether they still have a license to do business or not. That would be a showing of the sort that you could make. But I don't see any such showing here. The notice is gone. There's no possibility that this notice will affect your client in the future because it's gone. Your Honor, if I can refer to page 135 of a treatise that will remain unnamed that we have over there. There are two prongs to the L.A. County analysis. And L.A. County has been followed in many cases. One is, is there a likelihood that it will recur? And we have made clear this bank has been thoroughly taken care of. There are still aspects in Andorra, so there is redressability. But on the standing point, the second prong is not an additional requirement. It's an alternative requirement. If the effect of the pejorative primary money laundering concern statement is not completely and irrevocably eradicated, then we would maintain that under L.A. County and its progeny and distinguished commentators, it is not completely and irrevocably eradicated. But the problem is I've got to measure that against your complaint. Well, if I can. Your complaint, and I tried to parse it as carefully as I could to give you the benefit of the doubt. And one was you want it rescinded. And two, you want the notice declared unlawful. Well, I think the first is gone, and the second, I don't know how you get standing, because you have to address standing. Your Honor, we would argue that while the notice has been rescinded, because that was where we were at the time, an order holding unlawful, that is a declaration. And under L.A. County's progeny, that declaration is not moot, because if the initial order has not been completely and irrevocably eradicated in its effect, then we still have standing. See, I hear you, but you're coming at it in a way that I don't think we're allowed to come at it. When one piece of your claim is gone, you have to now go back and show standing. You're trying to ride standing that you had from the outset. And what I'm saying to you is I don't think the law allows you to do that. Once a piece of your claim is gone, for whatever reason, settlement, mootness, it's gone, Summers is a perfect example, you're now left with your additional claim. And they had standing in Summers to raise all of it initially. When they settled out one, when one piece of it was gone, the court did not analyze it under voluntary secession. They analyzed it as a standing question. And I don't know how you have standing. But, Your Honor, we would submit that it is the same claim. And while one area of potential relief is gone, the claim that the primary money laundering concern designation was improper and pretextual remains our claim. And we've brought claims under due process. We've brought claims under APA. And so the claim of unlawful action remains because they have not completely and irrevocably eradicated it. You want to keep going back to the mootness analysis. So, I mean, I hear you. I hear you. We would argue, and I think it's worth considering, that there is continuing effect in Andorra. It began even before the withdrawal. Andorra has done the bidding of the United States government at every point. When our clients tried to talk to the Andorrans and said, can we save the bank here? Can we save some value? They said, FinCEN won't let us. And when they asked for a restructuring rather than a liquidation, they said, FinCEN won't let us. And even today, there are very significant assets that haven't even moved. But it is continuing. What do you think would happen if you got a declaratory order? Suppose rescinding is off the table because the orders were withdrawn, the notices were withdrawn, rather. If you got a declaratory order of the kind that you seek, what would happen that would redound to your benefit? Well, we would look at before and after. Before FinCEN took this action, BPA was a bank in good standing. It was regulated. It had compliance audits every year. BPA reported the very same incidents of money laundering to the government. It was not shut down. It was certified. And Andorra also took the approach, we're a sovereign nation. We get to do what we want. Not after FinCEN used the hammer. But don't we need to address, among other things, whether a ruling in your favor would provide redressability now? That's the standing. That's certainly correct. But we believe that if a district court found that FinCEN and its bullying activities in Andorra had acted unlawfully and was not entitled to go into Andorra and tell them, you do it our way or worse will happen, we think it would be very significant for Andorra to understand that FinCEN didn't have the power to do what it did. And we would submit that this case falls into the top. But what would happen then? I mean, as you describe it, so Andorra would get some knowledge that it otherwise didn't have. But what practically would happen? Well, Andorra is holding 1.5 billion euros of assets. They get an order from the district court that says everything that FinCEN did was unlawful. Assuming FinCEN doesn't recur and make this action happen again, we think that Andorra will say we shouldn't have done what we did and we need to take steps to make the Siercos whole. They don't own the bank anymore. Well, but before, they expropriated under a retroactive law that said FinCEN wants us to take this bank away from them. We have to look at the situation that's now before us and consider it. They don't own the bank and we can consider that. But Andorra can restore the assets that haven't been transferred. Andorra sold a 600 million euro bank for 7 million euros. That is a highly conditional sale that could be unwound. And we don't think that is rank speculation. We think Andorra has said at every point we can't do X, we can't do Y because of FinCEN. If FinCEN goes away, there's a billion and a half euros that they can use to make the Siercos whole and also to get rid of the pejorative term of primary money laundering concern. I would bring the court's attention to the Totsi case where there was a known carcinogen on the list and it was found that national and international regulators would take that very seriously even if it wasn't binding. Well, our clients are still owned a bank that was a primary money laundering concern when it's clear that that designation, we would argue, was a designation that was pretextual. And if we have the opportunity to do that, FinCEN, they won't give us the FOIA documents. But even on this record, at this very early point in the case, we have a position where our clients have went from owning a bank in good standing, having had the bank expropriated at FinCEN's, after FinCEN used its hammer. Andorra still can make recompense, still has assets to make recompense, and has said originally, and indeed in the record, a Deputy Assistant Secretary of State says, we're really glad that Andorra addressed our concerns by taking these actions. Where in the record does it say that Andorra still has $1.5 billion in the bank and its assets? Well, it is subsequent, but if the case were remanded, the Pricewaterhouse was put in, but we are, it is not in the record in the court below because the transfer of ValBank had not happened at the time that this went up. So on the basis of this record, there were still significant assets inside and outside and ValBank had not started. But that is something that we could supplement. We have the difficulty of a limited situation. Does this happen before she files her brief to this court? The 1.5 billion euros? The transfer was still happening when we filed our brief, I believe, Your Honor. And Andorra hadn't sold, gotten rid of the bank before you submitted briefs? Andorra had. She would never raise this point with us. That's correct. It's a jurisdictional point. And it's not insignificant. So it's even something that would require you to supplement your argument if, in fact, the time sequence requires it. It's about the administration's mind anyway. It's about standing. You're trying to find redress somewhere, and you have to do it to show standing, and you didn't even raise this point. So if we had a question about standing, I mean, there's a way to seek supplemental filing. I need to be clear on one thing. I don't have a good analogy, but the argument is the government shot your client. You filed suit saying, take the gun off the market and give us relief. So the government took the gun off the market, but you still got this injury. And you say that were the district court to issue some type of declaratory order, then a foreign government would react in such a way that could benefit your client. And so the question is, is that such a speculative chain of events that even though you could, in my hypothetical, show injury and causation, you still can't show redressability, even if this information you and Judge Edwards have been discussing. Just to come back, there are press releases from Arab in the record that deal with the good bank, bad bank. And at the time that they were issued, there was still significant assets outside. So there is some record evidence that things have moved on. Coming back to your question, Judge Rogers, I would say the analogy is the U.S. government gave rope to a foreign government and said, tie this bank up. And if we don't, we'll tie you up. They tied the bank up just as requested. And the government said, we don't really want to do this. We didn't do it before. But FinCEN is making us tie you up. And the question is, is it pure speculation or does it fit in the Totsie, town of Barnstable, Manson line of cases to say, okay, it was illegal for the U.S. government to give in to the rope to say, tie this bank up. Your complaint doesn't play it that way. That's the problem. I mean, I hear you. But I still am bound at this position to look at your complaint to try and understand. That's not the way you play it. I know you're angry about their enforcement scheme and how they use it, but you didn't raise a complaint to match what you just said. Ron, we had no idea that there would be a tactical withdrawal where the sting in the tail would be you are still a primary money laundering concern, but now Andorra has done our bidding. Can I just ask you this question just to crystallize some of the questions that are being asked? So suppose that you hadn't filed your lawsuit before the notices were withdrawn. And then I take it that for you to get home on standing slash redressability now, you'd have to say that you still have standing slash redressability. If you would have filed a lawsuit after the notices were withdrawn and you said, I know the notices have been withdrawn, but I want a declaratory judgment that the notices should have never issued in the first place. Because if those notices are declared to have been unlawful when they were issued, I can still get some relief. Because if the court says that, then Andorra is going to do some things with respect to some actions that it's already taken that are going to do to our benefit. That's exactly the question. That's correct, Your Honor. And if we file for declaratory judgment, we would have said under L.A. County, they withdrew them. But the withdrawal was not a withdrawal. Completely. No, no, no. Stay with what you're going to Boston is posturing. He's saying, all right, I'll put you in a different position on this highlights a standing question. We're coming in now after and we're saying that declaration. We want to go after that. Because whatever. What's the cause? And what's the redress? That's exactly the way to frame this, because that's all you have left. So he's saying, just put it in a situation. Now you want to come in now and file a suit. Could you do it? Would you have standing? What's the reason? I would say yes, Your Honor. We the injury is that the initial notice prompted action in Andorra. The withdrawal of the notice did not completely and irrevocably remove the pejorative statement that it was a backup primary money loaner concern. And it did not stop Andorra from doing Andorra's bidding. So that's the injury. What is the redress? The redress is a declaration, which we asked for in our complaint, that the that FinCEN acted without legal power to do what it did. That's the redress that we can give. That's a generalized grievance. We don't like the way the agency acted. It has to be more specific than that. Oh, it would be very specific. We would get the documents that showed that Andorra was acting in concert and under the hammer of FinCEN. And that Andorra acted because FinCEN insisted on it. And Andorra would not have acted as it didn't act before unless FinCEN insisted on it. Well, FinCEN still would have insisted on it. You can't undo that. I mean, that actually happened. And a court declaring that what FinCEN did was unlawful wouldn't unwind the fact that FinCEN thought it could take that action that would, by hypothesis, occasion responses by Andorra. But if Andorra saw that an American court had declared FinCEN have an active ultra virus, then it is our position that is far more than speculation. The Andorrans have said we're only doing what we're doing because of FinCEN. And then the question is can they undo some of what they can do? And if it were amended to the district court, we would readily be able to show, particularly when we get the 347 pages that they've denied our FOIA request, to show that Andorra was an unwilling and coerced partner, which takes us back to Bennett v. Speer. It's one third party determining and coercing the action of another. So we would go to court, we would say, sorry, you haven't completely eradicated the effects, and we are entitled to a declaration in this case under the standard of L.A. County. And we have standing at the beginning, and we still have standing under Friends of the Earth, because there is no complete and irrevocable action. And that second prong is required. It's not alternative with recurrence. It's the government has a heavy burden which needs to satisfy both. And we contend that it failed to do that here. All right. Let us hear from the government. We'll give you some time in response. Good morning. May it please the Court, Sarah Carroll on behalf of the government. A declaration regarding FinCEN's withdrawn notices would not remedy any harm that plaintiffs claim Andorra is inflicting on them. Among other things, Andorra has conducted an independent audit in which it found that up to a fifth of BPA's assets were tainted but were suspicious of money laundering. Andorra has now sold the bridge bank containing the non-tainted assets to a third party. And beyond that, the type of relief that plaintiffs say that they want seems squarely at odds with this Court's decision in Cardenas and other cases because it's premised solely on speculation about how a foreign government might respond to a non-binding pronouncement regarding the actions of our government. I'm happy to answer. Suppose you had a situation in which they – just bear with me on the facts, all right? So you have a situation in which the government says, and there's documents that indisputably prove this, you know, I've got – I figured out what we can do. What we can do is we can issue these notices, and I'm not sure they're good, but I know what's going to happen if we issue them. If we issue them, the Andorran government is going to take actions that are going to get rid of this bank, and then we can withdraw them, and we'll never have to face any liability because that's all going to happen quickly, and the case will go away because of mootness. If that were to be the case, would you take the position that a court would be powerless to do anything? There would still have to be a showing of redressability, Your Honor. I think even in that situation, which I know Your Honor appreciates is not the same as this situation. Even in that situation, there would – for there to be standing or for the case not to be moot, there would still need to be some reason to think that there would be a substantial likelihood that a declaration would cause the foreign government to withdraw. So it wouldn't matter. I mean, you dream up the worst factual scenario possible just in terms of appearances. The result would still be the same. There's mootness, and there's no redressability after the notices have been withdrawn. That's right, Your Honor. I mean, courts – I can't remember the exact name of the case, but there are cases saying it doesn't matter how the case becomes moot. Once it's moot, a court is powerless to act. All right. But as to the non-tainted assets, in using Judge Srinivasan's hypothetical, if it were to be shown that Andorra would say that if Thinsen's action was unlawful, then we will return the untainted assets to the two brothers who owned the bank originally. Still no standing? That way you're describing, Your Honor, sounds like a closer case than this one. If there were some affirmative statement from Andorra saying today – So on standing, we have to take the allegations as true? That's true, Your Honor. The court has to take the non-conclusory, plausible allegations that are not contradicted by exhibits to the complaint or things that are subject to judicial notice as true. You're saying they haven't made these allegations. Right. With respect to what the bank's holding, indeed the complaint doesn't say anything about 1.5 billion, something about more than 82 million euros, so I'm not even sure what to think about it. But the complaint does not assert, nor does any supplemental pleading to this court indicate, that Andorra is in a position and will – would respond to this declaration and give the money back, so to speak. That's true, Your Honor. I mean, we have put forward evidence of Andorra's actions, and on the basis of the materials that we've submitted, redressability would require speculation that Andorra would heed a pronouncement by a U.S. court. It would think, okay, this pronouncement outweighs our independent finding that there was significant money laundering that was not – Wait, did you put forward evidence, or did you – We did not put – I don't know if evidence is the correct term, but we pointed the district court and this court to official statements of the Andorran government. I just want to make sure I didn't miss something. That's what you did. That's right, yes. That's what I was referring to, Your Honor. So I don't understand. This bank reported this transaction. Nothing happened here or in Andorra. Then FinCEN issues the notice, and things start to happen because of the impact of the actions of the U.S. banks. So the notices rely on a number of things. They rely on some particular – evidence of some particular transactions between – Right, but you're out of it because you've withdrawn the notices. That's true. All right. If Andorran says the only reason we sold and obtained its assets is because of FinCEN notice, all the plaintiffs rely on, really, for their claim that Andorra said it was acting only because of FinCEN is this press release from shortly after – No, I'm back in the complaint. Sorry about that. Okay. I'm trying to get it standing here. Okay. So the complaint includes a couple of allegations, like I think that someone from Andorra had told plaintiffs that Andorra wasn't going to challenge the notices or something like that. But that does not suggest that Andorra was acting only to please FinCEN or at the coercion of the U.S. government. I understand that, but the question is should the plaintiffs be given the opportunity to try to prove that? Because it's standing that taking their allegations is true. That's what I'm trying to get a hold of here. Even assuming that they were right that someone in Andorra – I mean, taking their allegation as true, the fact that someone in Andorra told them we're not going to challenge the notices doesn't mean that they had standing at the time they filed suit or even now two years down the road. I mean, that could mean that someone from Andorra was saying we're not going to challenge the notices because we've started our own investigation to clarify the facts, as Andorra said it wanted to do. Right, and we've found that there are some funds that are not tainted. So under Judge Trinovasa's hypothetical, there's still no standing? I mean, suppose there's a smoking gun in terms of why FinCEN acted. That's his hypothetical. Mm-hmm. Knowing that once a notice goes out, all the U.S. banks will cut off relationships. In that case, there still would not be standing because the Andorran government is acting for certain now and also at the time that the plaintiffs filed their lawsuit, it's acting on the basis of its own findings and its own concerns. I'm focused on the non-tainted assets. Okay, so those are the assets that have already been sold to a third party now. Andorra has- They're gone. We don't know exactly what the status of those assets is. All right, but the bank took the position that, you know, they were cooperating fully. They had disclosed fully. They'd done everything they were supposed to do. And the United States said not so. And Garland said, we agree not so. I just need to be clear that that's the end of the case. The reason I like my hypothetical about the shooting, there's no question I'm still shot. All right? And who shot me? And how did it come about? It's a terrible analogy, and I understand that. And the rope may be better, but the rope is too ethereal. And so the only question in my mind is, is it too speculative, even taking all the allegations of the complaint as true, that it can get relief because Andorra has made some sort of commitment? It is too speculative, Your Honor. Andorra has not only made some kind of commitment. Andorra has already sold the assets that it found were not tainted by criminal money laundering to a third party. And if Andorra tried to unwind that transaction, presumably there would be the interests of all kinds of innocent third parties implicated. There would presumably be litigation in Andorra. There would be all sorts of obstacles to plaintiffs getting their stake in the bank back. And even getting their status restored so they could organize in the future would not be redressed? I'm not aware of any exclusion or disqualification of plaintiffs from the ability to start a new bank or get reorganized. I just don't know either way whether there is anything like that. All right, so the prayer for relief should have, in your view, gone further. You say they're resting on a speculative chain of events to try and achieve redressability. Our case law is clear that's not enough. Yes, exactly, Judge Edwards. That's our basic point. And we think this case is comparable to Cardenas, but it's stronger than Cardenas. Because here we have all kinds of indications that Andorra is acting independently of anything that the U.S. government has done. And there's therefore even less reason to think that Andorra would change its course in response to some kind of non-binding pronouncement of a U.S. court. If there are no further questions, we ask that the court affirm the decision below. Thank you. Thank you.  Thank you, Your Honor. Although we don't think it is necessary, we would ask whether we can supplement. We think the Press-Waterhouse Report speaks of accounts that were in transfer. There is substantial value there. But I would like to refer to the record. I think the statement that it is wholly speculative as to what would Andorra do is not supported in the record. If you look at our complaint at JA-21, our clients were told FinCEN would not understand if we had any substantive discussions with you. If you look at the joint appendix at page 59, the head of the corporation, public corporation liquidating it, said FinCEN distrusts the Siercos. And while we normally allow people to participate in our restructuring process, put yourself in FinCEN's shoes. We will not allow you to be in those discussions. If we take a look at the interview with Deputy Assistant Secretary of State Tribble, he said, if FinCEN hadn't done what we had asked them to do, we never would have withdrawn the notice of primary money laundering concern. That appears at 327-328. And they thanked the Andorran government for acting on our concerns. So we have a clear sense that Andorra was regulating the bank in a certain way. They found it acceptable. They knew about these incidents. FinCEN acts and says, if you don't shut this bank down, worse things are going to happen to you. And that is what they did. I don't think it is at all speculative. It does not need to be binding. A decisions court does not need to be binding on Andorra. It is really not addressing addressability, because the way the argument has come down, you are left with the assertion that we need a declaration on the second part of our complaint that is still around, we think, that you should declare the original notice unlawful, because if we get that declaration, we then will be able to go to Andorra and get some monies back. That is all this case is about now. If you can't show that, you have no standing. And you can't say, well, but there is a possibility, because of all that led to this, they may give it back, or we are hopeful, or it would be nice, or at least we have a shot. At least as I read the case law, it is on you, the burden. You keep wanting to go back to movements. The burden is not there anymore. The burden is on you now to show that you have standing, and it is a heavy burden, to show that you have standing and addressability. It can't just be specular. We need to significantly increase the likelihood that Andorra will change what it has done. And obviously predicting future conduct always has an uncertain component. Don't you see the case you are running up against? You are almost in the generalized grievance area, where people come in and say, look, if I can get this from the court, I bet I can do some good things. And we say, well, that is interesting, but that is not standing. Two things, Your Honor. If we can supplement the record, we can show what is still there in Andorra, and also under the TOTSI formulation, there is a logical analytic framework. If you say somebody is not a primary money laundering concern, we can then assume the third parties will act differently than when they are. It is a pejorative term that led to the closing of the bank. And so if Andorra has said, we can't deal with you the way we dealt with you before because of FinCEN, and now FinCEN has acted unlawfully, it is not only a logical inference, but there are also assets there. There are things that remain, that in the record, there is the Price Waterhouse, there are thousands of accounts that haven't gone over it. Not because they are tainted, or there is a suspicion of money laundering, but because they don't have all the customer information. But there are lots of assets that are there. This is a half billion euro bank that got sold for seven million. Indeed, even the buyer has the option to put it back. So all we need is the prospect of some relief, however small. That's the standard under Knox. So I understand that we need to show standing. But the uncertainty about what relief you can get at what level, given the pressure that Andorra was under, if this pressure is removed, Andorra can act the way it normally acts, like a normal regulator, instead of a small country with a small bank that is being hit in the head with a hammer. Generally, when you stop hitting people in the head with a hammer, once their head clears, they do the right thing. The wrong thing was done here because FinCEN insisted upon it, and once they stop and once the court says that's illegal, it's not generalized. It's specific to Banco Privada Andorra and to the Andorran regulators. All right. Thank you. We'll take the case under revise.
judges: Rogers, Srinivasan, Edwards